No. 15-2859

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

ONE (1) PALMETTO STATE ARMORY PA-15 MACHINEGUN RECEIVER/FRAME, UNKOWN CALIBER SERIAL NUMBER LW001804; WATSON FAMILY GUN TRUST,

Claimant-Appellant,

RYAN S. WATSON, Individually and as Trustee of the Watson Family Gun Trust,

Plaintiff-Appellant,

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA; DIRECTOR BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,

Defendants-Appellees,

On Appeal from the United States District Court for the
Eastern District of Pennsylvania (Nos. 15-2202 and 14-6569) (Dazwell, J.)

## BRIEF FOR THE APPELLEES

BENJAMIN C. MIZER
*Principal Deputy Assistant Attorney General*

ZANE DAVID MEMEGER
*United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
PATRICK G. NEMEROFF
*(202) 305-8727*
*Attorneys, Appellate Staff*
*Civil Division, Room 7217*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C.  20530*

# TABLE OF CONTENTS

Page:

STATEMENT OF JURISDICTION ...................................................................1

STATEMENT OF THE ISSUE..........................................................................1

STATEMENT OF RELATED CASES ...............................................................1

STATEMENT OF THE CASE............................................................................2

    A.    Statutory and Regulatory Background...........................................2

    B.    Factual and Procedural Background ...............................................5

SUMMARY OF ARGUMENT............................................................................9

STANDARD OF REVIEW .................................................................................10

ARGUMENT ........................................................................................................11

    I.    The District Court Correctly Dismissed Plaintiff's Second
        Amendment Challenge...................................................................11

        A.    Plaintiff Lacks Standing Because Pennsylvania Law
            Independently Prohibits Him from Possessing a
            Machine Gun ................................................................11

        B.    The Second Amendment Right Does Not Extend to
            Possession of Machine Guns ........................................13

        C.    Federal Law Permissibly Regulates the Private Possession
            of Machine Guns............................................................21

    II.    The District Court Correctly Held that the Gun Control Act
         Applies to Plaintiff's Possession of a Machine Gun ...................26

    III.    Plaintiff's Remaining Claims Are Waived and, in Any Event,
          Lack Merit ....................................................................................28

CONCLUSION ..................................................................................................................32

REQUIRED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                **Page(s):**

*Abbott v. Latshaw,*
  164 F.3d 141 (3d Cir. 1998) ............................................................30

*Baer v. United States,*
  722 F.3d 168 (3d Cir. 2013) ............................................................10

*Ballentine v. United States,*
  486 F.3d 806 (3d Cir. 2007) ............................................................11

*Board of Regents of State Colls. v. Roth,*
  408 U.S. 564 (1972) ........................................................................30

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ...................................7, 9, 13, 14, 17, 18, 19, 20, 22, 25

*Drake v. Filko,*
  724 F.3d 426 (2013) ...........................................................21, 22, 26

*FDIC v. Deglau,*
  207 F.3d 153 (3d Cir. 2000) ............................................................29

*Friedman v. City of Highland Park,*
  784 F.3d 406 (7th Cir. 2015), *cert. denied,*
  No. 15-133, 2015 WL 4555141 (Dec. 7, 2015) ....................................15, 25

*Gonzalez v. Raich,*
  545 U.S. 1 (2005) ..............................................................................8

*Hamblen v. United States,*
  591 F.3d 471 (6th Cir. 2009) ............................................................14

*Heller v. District of Columbia,*
  670 F.3d 1244 (D.C. Cir. 2011) ...................................................15, 21

*Hollis v. Lynch*:
   __ F. Supp. 3d __, 2015 WL 4713277 (N.D. Tex. Aug. 15, 2015),
      *appeal docketed*, No. 15-10803 (5th Cir. Aug. 21, 2015)........................................ 1, 12

*Kachalsky v. County of Westchester*,
   701 F.3d 81 (2d Cir. 2012) ........................................................................22

*Kirschbaum v. WRGSB Ass'ns*,
   243 F.3d 145 (3d Cir. 2001) .......................................................................28

*Macktal v. Chao*,
   286 F.3d 822 (5th Cir. 2002) ......................................................................31

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ...................................................................................13

*Mitchell v. Cellone*,
   389 F.3d 86 (3d Cir. 2004) .........................................................................28

*Morrison v. State*,
   170 Tex. Crim. 218 (1960) .........................................................................15

*Mudric v. Attorney General of the United States*,
   468 F.3d 94 (3d Cir. 2006) .........................................................................31

*National Fed'n of Indep. Bus. v. Sebelius*,
   132 S. Ct. 2566 (2012) ...............................................................................29

*NRA v. ATF*,
   700 F.3d 185 (5th Cir. 2012) ........................................................21, 22, 23

*New Jersey Physicians, Inc. v. President of the United States*,
   653 F.3d 234 (3d Cir. 2011) .......................................................................11

*New York State Rifle and Pistol Ass'n v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ................................................................14, 22

*Olympic Arms v. Buckles*,
   301 F.3d 384 (6th Cir. 2002).......................................................................30

*Rinzler v. Carson*,
  262 So. 2d 661 (Fla. 1972) .............................................................25

*RSM, Inc. v. Herbert*,
  466 F.3d 316 (4th Cir. 2006) .........................................................24

*Schrader v. Holder*,
  704 F.3d 980 (D.C. Cir. 2013) ......................................................23

*Schweiker v. Hansen*,
  450 U.S. 785 (1981).......................................................................31

*State v. Langford*,
  10 N.C. 381 (1824) ........................................................................20

*Travitz v. Northeast Dep't ILGWU Health & Welfare Fund*,
  13 F.3d 704 (3d Cir. 1994) ............................................................28

*Turner Broad. Sys. v. FCC*,
  520 U.S. 180 (1997).......................................................................26

*Tyler v. Hillsdale Cty. Sheriff's Dep't*,
  775 F.3d 308 (6th Cir. 2014), *pet. for reh'g en banc granted*,
  No. 13-1876 (Apr. 21, 2015) .........................................................23

*United Gas Improvement Co. v. Callery Props., Inc.*,
  382 U.S. 223 (1965).......................................................................31

*United States v. Allen*,
  630 F.3d 762 (8th Cir. 2011) .........................................................14

*United States v. Chovan*,
  735 F.3d 1127 (9th Cir. 2013) .......................................................23

*United States v. Dunlap*,
  209 F.3d 472 (6th Cir. 2000) ...................................................23, 24

*United States v. Dunn*,
  946 F.2d 615 (9th Cir. 1991)............................................................2

*United States v. Fincher*,
   538 F.3d 868 (8th Cir. 2008), *cert. denied*,
   555 U.S. 1174 (2009) ................................................................................ 14, 15

*United States v. Golding*,
   332 F.3d 838 (5th Cir. 2003) ............................................................................24

*United States v. Henry*,
   688 F.3d 637 (9th Cir. 2012) ..............................................10, 14, 15, 16, 29

*United States v. Jennings*,
   195 F.3d 795 (5th Cir. 1999) ............................................................................23

*United States v. Kirk*,
   105 F.3d 997 (5th Cir. 1997) ..................................................................... 24, 25

*United States v. Mahin*,
   668 F.3d 119 (4th Cir. 2012) ............................................................................23

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010), *cert. denied*,
   562 U.S. 1158 (2011) .................................7, 10, 14, 17, 19, 20, 22, 23

*United States v. McCartney*,
   357 F. App'x 73 (9th Cir. 2009) .......................................................................15

*United States v. Miller*,
   307 U.S. 174 (1939) ................................................................................. 13, 18

*United States v. O'Brien*,
   560 U.S. 218 (2010) .........................................................................................24

*United States v. Rybar*,
   103 F.3d 273 (3d Cir. 1996) ...................................................................... 8, 29

*United States v. Serna*,
   309 F.3d 859 (5th Cir. 2002) ............................................................................24

*United States v. Williams*,
   616 F.3d 685 (7th Cir. 2010) ............................................................................23

*White v. United States,*
   601 F.3d 545 (6th Cir. 2010)...........................................................................11

*Woollard v. Gallagher,*
   712 F.3d 865 (4th Cir. 2013)...........................................................................22


**Statutes:**

Firearms Owners' Protection Act of 1986,
   Pub. L. No. 99-308, 100 Stat. 449 ....................................................................4

Gun Control Act of 1968:
   18 U.S.C. § 921(a)(1) .........................................................................................5
   18 U.S.C. § 921(a)(23) .......................................................................................4
   18 U.S.C. § 922(g)(1) .......................................................................................27
   18 U.S.C. § 922(g)(4) .......................................................................................23
   18 U.S.C. § 922(o) .....................................................................................1, 4, 5
   18 U.S.C. § 922(o)(1) .........................................................................................2
   18 U.S.C. § 922(o)(2) .........................................................................................2

National Firearms Act of 1934, 26 U.S.C., ch. 53:
   26 U.S.C. § 5822 ....................................................................................2, 3, 31
   26 U.S.C. § 5841 ......................................................................................... 2, 3
   26 U.S.C. § 5845(b) ...........................................................................................3

Omnibus Crime Control and Safe Streets Act of 1968,
   Pub. L. No. 90-351, tit. IV, 82 Stat. 197........................................................3, 4

28 U.S.C. § 1291 ..................................................................................................1

28 U.S.C. § 1331 ..................................................................................................1

28 U.S.C. § 1343 ..................................................................................................1

28 U.S.C. § 1346 ..................................................................................................1

28 U.S.C. § 2201 ..................................................................................................1

28 U.S.C. § 2202 ..................................................................................................1

1881 Ark. Acts 191 ........................................................................................16

1931 Ark. Acts 705 ......................................................................................16

1927 Cal. Stat. 938 .......................................................................................16

37 Del. Laws 813 (1931) ..............................................................................16

1837 Ga. Laws 90 .........................................................................................16

1881 Ill. Laws 73 ..........................................................................................16

1931 Ill. Laws 452 ........................................................................................16

1927 Ind. Acts 469 .......................................................................................16

1927 Iowa Acts 201 ......................................................................................16

1933 Kan. Sess. Laws 76 .............................................................................16

1932 La. Acts 337 .........................................................................................16

1927 Mich. Pub. Acts 888 ............................................................................16

1929 Mich. Pub. Acts 529 ............................................................................16

1933 Minn. Laws 231 ...................................................................................16

1929 Mo. Laws 170 ......................................................................................16

1929 Neb. Laws 674 .....................................................................................16

1889 N.Y. Laws 167 .....................................................................................16

1931 N.Y. Laws 2389 ...................................................................................16

1931 N.D. Laws 305-06 ...............................................................................16

18 Pa. C.S.A. § 908 ........................................................................................7

18 Pa. C.S.A. § 908(a) .................................................................................11

18 Pa. C.S.A. § 908(b)(1) ....................................................................12

18 Pa. C.S.A. § 908(c) .......................................................................11

1929 Pa. Laws 777 .............................................................................16

1927 R.I. Acts & Resolves 256 ...........................................................16

1934 S.C. Acts 1288-89 ......................................................................16

1837-1838 Tenn. Pub. Acts 200, ch. 137 ...........................................16

1879 Tenn. Pub. Acts 135 ..................................................................16

1933 Tex. Gen. Laws 219 ...................................................................16

1933 Wash. Sess. Laws 335 ................................................................16

1929 Wis. Sess. Laws 157 ..................................................................16

**Regulation:**

27 C.F.R. § 479.65 ...............................................................................2

**Rules:**

Fed. R. Civ. P. 12(b)(1) .....................................................................10

Fed. R. Civ. P. 12(b)(6) ................................................................ 10, 11

Fed. R. Civ. P. 54(b) .............................................................................1

**Legislative Materials:**

132 Cong. Rec. 9602 (1986) ................................................................4

H.R. Rep. No. 83-1337 (1954) ...................................................... 2, 24

H.R. Rep. No. 99-495, *reprinted in* 1986 U.S.C.C.A.N. 1327 (1986) ......................... 4, 24

S. Rep. No. 88-1340 (1964) .......................................................................3

S. Rep. No. 90-1501 (1968) ......................................................................23


**Other Authorities:**

76 Am. Jur. 2d Trusts (2015) ....................................................................8

4 William Blackstone, *Commentaries on the Laws of England* (1769) ............................. 9, 13

78 Fed. Reg. 55,014 (Sept. 9, 2013) ...........................................................27

81 Fed. Reg. 2658 (Jan. 15, 2016) .............................................................27

William Rosenau, Book Note, *The Social History of the Machine Gun*,
   90 Tech. Rev. 74 (Jan. 1987) ...............................................................16

Eugene Volokh:
   *State Constitutional Rights to Keep and Bear Arms*,
      11 Tex. Rev. L. & Pol. 191 (2006) .....................................................16
   *Implementing the Right to Keep and Bear Arms for Self-Defense*,
      56 UCLA L. Rev. 1443 (2009) .........................................................25

## STATEMENT OF JURISDICTION

Plaintiff invoked the jurisdiction of the district court under 28 U.S.C. §§ 1331, 1343, 1346, 2201, and 2202.  On July 22, 2015, the district court granted the United States' motion to dismiss plaintiff's action seeking declaratory and injunctive relief, 1 App. 50-51, but did not dispose of the consolidated forfeiture action against the machine gun manufactured by plaintiff, 1 App. 3.  Plaintiff filed a notice of appeal on August 1, 2015.  1 App. 54.  After this Court issued an order noting that the district court's order was not final within the meaning of 28 U.S.C. § 1291, plaintiff filed an unopposed motion for certification of entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b), which the district court granted.  *See* 15-cv-2202, Doc. 15.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly dismissed plaintiff's challenge to federal restrictions under the National Firearms Act and section 922(o) of the Gun Control Act on the manufacture and possession of machine guns.

## STATEMENT OF RELATED CASES

This case has not previously been before any court other than the district court.  A challenge to the same federal laws is currently pending on appeal before the Fifth Circuit in *Hollis v. Lynch*, 15-10803 (5th Cir.).

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

Federal law generally prohibits the private manufacture and possession of machine guns. The National Firearms Act, 26 U.S.C. chapter 53, requires approval from the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) before manufacture of a machine gun, 26 U.S.C. § 5841, and provides that no application shall be approved if the making or possession of the machine gun "would place the person making the firearm in violation of law," *see* 26 U.S.C. § 5822; 27 C.F.R. § 479.65. The Gun Control Act, in turn, makes it "unlawful for any person to transfer or possess a machinegun," with exceptions related to federal and state government entities and firearms lawfully possessed before 1986. *See* 18 U.S.C. § 922(o)(1), (2).

Congress enacted the National Firearms Act of 1934 to target "lethal weapons . . . [that] could be used readily and efficiently by criminals or gangsters." H.R. Rep. No. 83-1337, at 4542 (1954). The Act does not apply to all guns, but only to "firearms," which are defined to include machine guns, short-barreled shotguns, and other specified weapons that Congress has deemed "inherently dangerous and generally lacking usefulness, except for violent and criminal purposes." *United States v. Dunn*, 946 F.2d 615, 621 (9th Cir. 1991). The Act defines a machine gun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," or various parts thereof (including "any combination of parts from which

2

a machinegun can be assembled"). 26 U.S.C. § 5845(b). The Act provides for the creation of a "central registry of all firearms in the United States," in which each firearm manufactured or imported must be registered. 26 U.S.C. § 5841. Before a machine gun or other firearm may be made, the maker must: (1) file "a written application . . . to make and register the firearm"; (2) pay "any tax payable"; (3) "identif[y] the firearm to be made"; (4) "identif[y] himself in the application form"; and (5) obtain the approval of ATF "to make and register the firearm" with "the application form show[ing] such approval." *Id.* § 5822.

Congress enacted the Gun Control Act in 1968, following a multi-year inquiry that included "field investigation and public hearings," S. Rep. No. 88-1340, at 1 (1964), during which Congress found "that the ease with which" guns could be acquired by "criminals . . . and others whose possession of such weapons is similarly contrary to the public interest[] is a significant factor in the prevalence of lawlessness and violent crime in the United States," Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Title IV, § 901(a)(2), 82 Stat. 197, 225. Congress concluded "that there is a widespread traffic in firearms moving in or otherwise affecting interstate or foreign commerce, and that the existing Federal controls over such traffic do not adequately enable the States to control this traffic within their own borders through the exercise of their police power." *Id.* § 901(a)(1), 82 Stat. at 225. Congress determined "that only through adequate Federal control over interstate and foreign commerce in these weapons . . . can this grave problem be properly dealt with,

3

and effective State and local regulation of this traffic be made possible." *Id.*
§ 901(a)(3), 82 Stat. at 225.

In 1986, Congress enacted amendments "to strengthen the [Gun Control Act]
to enhance the ability of law enforcement to fight violent crime and narcotics
trafficking," H.R. Rep. No. 99-495, at 1, *reprinted in* 1986 U.S.C.C.A.N. 1327 (1986); *see*
Firearms Owners' Protection Act of 1986, Pub. L. No. 99-308, 100 Stat. 449.  Among
other changes, Congress added 18 U.S.C. § 922(o) to generally prohibit private
possession of machine guns. [1]  In so doing, Congress recognized "the need for more
effective protection of law enforcement officers from the proliferation of machine
guns," H.R. Rep. No. 99-495, at 7, 1986 U.S.C.C.A.N. at 1328, 1333 (describing
proposed machine gun restrictions as "benefits for law enforcement"); *id.* at 4, 1986
U.S.C.C.A.N. at 1330 (describing machine guns as "used by racketeers and drug
traffickers for intimidation, murder and protection of drugs and the proceeds of
crime"); *see also* 132 Cong. Rec. 9,602 (1986) (statement of Sen. Kennedy) ("The only
thing that has changed about the machinegun situation since the 1968 act . . . is that
machine guns have become a far more serious law enforcement problem.").

---

[1] The Gun Control Act defines the term "machinegun" by incorporating the National
Firearms Act's definition of the term.  *See* 18 U.S.C. § 921(a)(23).

## B.  Factual and Procedural Background

1.  Plaintiff Ryan S. Watson, on behalf of the Watson Family Gun Trust, submitted an application to ATF to manufacture an M-16 style machine gun. 2 App. 91.  In his application, plaintiff did not claim to fall within one of the two exceptions to the prohibition on possession of machine guns set forth in 18 U.S.C. § 922(o).  Instead, he believed his application should be approved because it was on behalf of his unincorporated trust, and that a trust is not a "person" for purposes of the Gun Control Act, 18 U.S.C. § 921(a)(1), and therefore not subject to section 922(o).  2 App. 78-79.  On August 5, 2014, an ATF examiner mistakenly approved plaintiff's application.  2 App. 91.  On September 18, 2014, ATF informed plaintiff that the approval had been a mistake and that his application was disapproved. 2 App. 96.

In a subsequent letter, ATF explained that plaintiff's "application to make a machinegun is . . . denied," because he is "prohibited by law from possessing a machinegun."  2 App. 98.  ATF further explained that "[t]he fact that an unincorporated trust is not included in the definition of 'person' under the [Gun Control Act] does not mean that an individual may avoid liability under section 922(o) by placing a machinegun 'in trust.'"  *Id.*  Rather, because "a trust is not an entity recognized as a 'person' under the applicable law, it cannot make or hold property and is disregarded."  *Id.*  The letter explained that ATF "consider[s] the individual acting on behalf of the trust to be the proposed maker/possessor of the machinegun."  *Id.*

Upon learning that plaintiff had manufactured a machine gun after his application was erroneously approved and before it had been disapproved, ATF advised plaintiff that "possession of this unregistered machinegun is a Federal felony," and that plaintiff "should make arrangements . . . to abandon or otherwise surrender" the machine gun to an ATF agent. 2 App. 100-01. Plaintiff subsequently surrendered the machine gun under protest to an ATF agent. 2 App. 80.

2. Plaintiff filed this lawsuit in the Eastern District of Pennsylvania, seeking declaratory and injunctive relief finding "the ban on machine guns in violation of Article I of the United States Constitution and unconstitutional under the Second, Ninth and Tenth Amendments" and "prohibiting Defendants from unjustly taking property without Due Process." 2 App. 69. In the alternative, plaintiff sought "declaratory and injunctive relief finding that 18 U.S.C. § 922(o) does not prohibit an unincorporated trust from manufacturing or possessing a machine gun." *Id.* Plaintiff also asserted a claim of detrimental reliance on ATF's erroneous approval of his machine gun application. 2 App. 84.[2]

The district court granted the government's motion to dismiss plaintiff's complaint for failure to state a claim. 1 App. 1-49. The court first concluded that

---

[2] The United States separately initiated a forfeiture action with respect to the machine gun Watson had manufactured and then surrendered to ATF. *See United States of America v. One (1) Palmetto State Armory PA-15 MachineGun Receiver, et al.*, 14-cv-6569, Doc. 1. The district court consolidated the forfeiture action with plaintiff's challenge. *See* Doc. 5.

plaintiff has standing to challenge the federal firearms provisions, despite the fact that Pennsylvania law independently prohibits the possession of machine guns. *See* 18 Pa. C.S.A. § 908. The court relied on Pennsylvania's safe harbor provision for individuals who have complied with the National Firearms Act. 1 App. 21. The court also accepted plaintiff's argument that "should he prevail in his [National Firearms Act] challenge, the Commonwealth statute would also fail." *Id.*

The district court held that plaintiff failed to state a claim under the Second Amendment, "[b]ecause the Second Amendment does not protect machine gun possession." 1 App. 33. The court noted that, in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), the Supreme Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms." 1 App. 29. The Supreme Court "limited the Second Amendment to only include those weapons 'typically possessed by law-abiding citizens for lawful purposes,'" 1 App. 30 (quoting *Heller*, 554 U.S. at 625), which "dovetailed with the historical prohibition on 'dangerous and unusual weapons,'" *id.* (quoting *Heller*, 554 U.S. at 627). The court further observed that, in *United States v. Marzzarella*, 614 F.3d 85, 94-95 (3d Cir. 2010), this Court "explained that 'the Supreme Court has made clear the Second Amendment does not protect' possession of machine guns in the home.'" 1 App. 31 (quoting *Marzarella*, 614 F.3d at 94). The court therefore concluded that "[t]he ban on machine guns outside the purely military context, like the felon dispossession statutes,

is 'presumptively lawful,' as *Heller* held and as our Court of Appeals made pellucid in *Marzzarella*." 1 App. 33.

The district court held that plaintiff's Commerce Clause challenge was similarly precluded by "well-established holdings by our Court of Appeals and other circuits that Congress did *not* exceed its Commerce Clause power when it prohibited machine gun manufacture and possession." 1 App. 39. The court explained that "[t]here is no doubt, under our Court of Appeal's twenty year-old *Rybar* decision and the Supreme Court's *Raich* decision since, that Congress acted well within its Commerce Clause powers." 1 App. 36-37 (citing *United States v. Rybar*, 103 F.3d 273 (3d Cir. 1996); *Gonzalez v. Raich*, 545 U.S. 1 (2005)).

The district court also held that plaintiff had failed to state a claim with respect to his other causes of action. The court rejected plaintiff's due process claim on the ground that he "has no legally protected interest in either the [mistakenly approved application] or the machine gun," because "no legitimate entitlement can arise when possession of the property at issue is expressly forbidden." 1 App. 43. The court rejected plaintiff's claim that his trust had a property interest in the machine gun, because "[a] Trust 'is not an entity distinct from its trustees and capable of legal action on its own behalf'" and therefore "cannot contract or own property." 1 App. 42-43 (quoting 76 Am. Jur. 2d Trusts § 3 (2015)). Plaintiff's equal protection claim was dismissed because he could not identify a fundamental constitutional right to possess a machine gun and "[h]e does not and cannot allege that any distinction rested on a

8

suspect class." 1 App. 48. Finally, the court held that plaintiff "cannot make out a detrimental reliance claim because he cannot show that his reliance on the approval of his Form 1 was to his detriment," 1 App. 48, or that ATF's erroneous approval rose "to the level of affirmative misconduct," which "requires something far more than mere negligence," 1 App. 49 (internal quotation marks omitted).

## SUMMARY OF ARGUMENT

As a threshold matter, plaintiff cannot satisfy the Article III standing requirement of redressability, because he likely would be barred from possessing a machine gun by Pennsylvania law even if he prevailed in this action.

The district court correctly held, in any event, that plaintiff's Second Amendment claim is foreclosed by the Supreme Court's analysis in *District of Columbia v. Heller*, 554 U.S. 570, 624 (2008), which expressly rejected an interpretation of the Second Amendment that "would mean that the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." The Supreme Court recognized that one "important limitation on the right to keep and carry arms" is that "the sorts of weapons protected were those in common use at the time," *id.* at 627 (internal quotation marks omitted), emphasizing that this "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *id.* (quoting 4 William Blackstone, Commentaries on the Laws of England 148-49 (1769)). Accordingly, this Court and every other court of appeals to address the issue has held that the Second Amendment right does not extend to the possession of

9

machine guns. *See United States v. Marzzarella*, 614 F.3d 85, 94-95 (3d Cir. 2010); *see also, e.g.*, *United States v. Henry*, 688 F.3d 637, 639-40 (9th Cir. 2012) (collecting cases).

Plaintiff nevertheless contends that the Second Amendment extends to the possession of a machine gun on the ground that these weapons are useful in military service. The Supreme Court reached the opposite conclusion in *Heller*, and, in any event, even if possession of machine guns fell within the ambit of the Second Amendment, the prohibition would be sustained because it furthers Congress's compelling interest in protecting the public safety.

The district court also correctly rejected plaintiff's implausible interpretation of the Gun Control Act not to apply to individuals who hold machine guns and other firearms in trust. Because a trust cannot possess a firearm for purposes of the Gun Control Act, ATF properly considers individuals acting on behalf of the trust to possess the firearm. Plaintiff has not raised his other constitutional and statutory claims on appeal, and they are thus waived. Those claims, in any event, lack merit for the reasons discussed below.

## STANDARD OF REVIEW

This Court reviews de novo a district court's disposition of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013). It also reviews de novo a district court's order granting a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim.  *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007).

## ARGUMENT

### I. The District Court Correctly Dismissed Plaintiff's Second Amendment Challenge.

#### A. Plaintiff Lacks Standing Because Pennsylvania Law Independently Prohibits Him from Possessing a Machine Gun.

To establish standing, a plaintiff must demonstrate an "injury in fact" that is "concrete and particularized" and "fairly traceable to the challenged action of the defendant," and must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *New Jersey Physicians, Inc. v. President of the United States*, 653 F.3d 234, 238 (3d Cir. 2011) (internal quotation marks omitted).

Plaintiff lacks Article III standing to assert his Second Amendment challenge because no relief that could be granted in this suit would permit plaintiff to manufacture a machine gun.  Pennsylvania, which is not a party to this suit, independently makes it a crime to "make[]" or "possess[]" a machine gun.  18 Pa. C.S.A. § 908(a), (c).   Regardless of the outcome in this suit, therefore, plaintiff's asserted injury would not be redressed.  *See White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (holding that plaintiff could not satisfy Article III standing to challenge federal cockfighting ban where state law independently banned the same conduct).

In concluding that plaintiff's injury is nonetheless redressable, the district court relied on an exception to the Pennsylvania prohibition on machine gun possession for

11

individuals who "compl[y] with the National Firearms Act." 1 App. 21 (quoting 18 Pa. C.S.A. § 908(b)(1)). But that safe harbor provision depends on federal law for its operation, and therefore would not permit plaintiff to possess a machine gun even if he were to prevail in this lawsuit. Plaintiff would be unable to comply with the National Firearms Act if the Act were struck down as unconstitutional. And if ATF no longer registered machine guns pursuant to federal law, machine guns could not qualify for the safe harbor provision and would remain prohibited under Pennsylvania law. *See Hollis v. Lynch*, __ F. Supp. 3d __, 2015 WL 4713277, at *11 (N.D. Tex. Aug. 15, 2015) (rejecting argument that a safe harbor provision in Texas's prohibition on the possession of machine guns rendered a challenge only to the federal prohibition redressable).

The district court also suggested that plaintiff's injury is redressable because striking down the federal regulation of machine guns on Second Amendment grounds would necessarily render the Pennsylvania law invalid. 1 App. 21. But "post-*Heller* Second Amendment cases instruct . . . that the validity of state and local regulation turns on the particular provision at issue." *Hollis*, 2015 WL 4713277, at *12. Plaintiff cannot establish standing by speculating regarding the possible effect of a ruling in this case on any future challenge to Pennsylvania's independent prohibition on his possession of a machine gun.

In any event, even if plaintiff could establish Article III standing, his Second Amendment claim would fail on the merits for the reasons set forth below.

12

**B. The Second Amendment Right Does Not Extend to Possession of Machine Guns.**

1. The Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), explained that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." The Court recognized that one "important limitation of the right to keep and carry arms" is that "the sorts of weapons protected were those in common use at the time," *id.* at 627 (quotation marks omitted). It concluded that this "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* (quoting 4 William Blackstone, *Commentaries on the Laws of England* 148-49 (1769)). The Court "repeat[ed] those assurances" in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion), observing that "the right to keep and bear arms is not 'a right to keep and carry *any weapon whatsoever* in any manner whatsoever and for whatever purpose,'" *id.* (quoting *Heller*, 554 U.S. at 626) (emphasis added). The Court did not canvass in detail every weapon that falls outside of the Second Amendment's scope, but it explicitly rejected an interpretation of the Second Amendment that "would mean that the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." *Heller*, 554 U.S. at 624. The Court explained that the exclusion of "dangerous and unusual weapons" from the Second Amendment right was consistent with its decision in *United States v. Miller*, 307 U.S. 174 (1939), which rejected a challenge to an indictment for unlawful transportation of

13

a short barreled shotgun, because "the *type of weapon at issue* was not eligible for Second Amendment protection." *Heller*, 554 U.S. at 622.

Applying *Heller*, this Court has recognized that there is no Second Amendment right to possess a machine gun. In *United States v. Marzzarella*, 614 F.3d 85, 94-95 (3d Cir. 2010), *cert. denied*, 562 U.S. 1158 (2011), the Court rejected an argument that the defendant's possession of an unmarked firearm was protected by the Second Amendment because he possessed the firearm at home for purposes of self-defense. The Court explained that, "[b]y this rationale, any type of firearm possessed in the home would be protected merely because it could be used for self-defense." *Id*. Under the defendant's interpretation, the Second Amendment would have extended even to "dangerous and unusual weapon[s]" such as "machine guns or short-barreled shotguns." *Id*. This Court rejected that position, explaining that "the Supreme Court has made clear the Second Amendment does not protect those types of weapons." *Id*.

Every other court of appeals to address the issue has likewise held that the Second Amendment right does not extend to the possession of machine guns. *See United States v. Henry*, 688 F.3d 637, 639-40 (9th Cir. 2012); *United States v. Allen*, 630 F.3d 762, 766 (8th Cir. 2011); *Hamblen v. United States*, 591 F.3d 471, 472, 474 (6th Cir. 2009); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008), *cert. denied*, 555 U.S. 1174 (2009); *see also New York State Rifle and Pistol Ass'n. v. Cuomo*, 804 F.3d 242, 256 (2d Cir. 2015) (noting that "*Heller* expressly highlighted weapons that are most useful in military service, such as the fully automatic M-16 rifle, as weapons that could be

14

banned without implicating the Second Amendment" (internal quotation marks

omitted)); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015)

(observing that "military-grade weapons (the sort that would be in a militia's armory),

such as machine guns, and weapons especially attractive to criminals, such as short-

barreled shotguns, are not" protected by the Second Amendment), *cert. denied*, No. 15-

133, 2015 WL 4555141 (Dec. 7, 2015); *Heller v. District of Columbia*, 670 F.3d 1244,

1270 (D.C. Cir. 2011) ("[F]ully automatic weapons, also known as machine guns, have

traditionally been banned and may continue to be banned after *Heller*.").

     As the Eighth Circuit observed, machine guns are "not in common use by law-

abiding citizens for lawful purposes and therefore fall within the category of

dangerous and unusual weapons that the government can prohibit for individual use."

*Fincher*, 538 F.3d at 874; *see also United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir.

2009) ("[T]he possession of a machine gun by a private citizen is quite unusual in the

United States."); *Morrison v. State*, 170 Tex. Crim. 218, 221 (1960) ("A machine gun is

not a weapon commonly kept, according to the customs of the people and

appropriate for open and manly use in self defense.").  Indeed, "[s]hort of bombs,

missiles, and biochemical agents, . . . few weapons . . . are more dangerous than

machine guns," which "are 'dangerous and unusual weapons' . . . not protected by the

Second Amendment," *Henry*, 688 F.3d at 640.

     The historical record leaves no doubt as to the correctness of the uniform

holdings that the Second Amendment right does not extend to the possession of

machine guns. "The machine gun was first widely used during World War I, where it 'demonstrated its murderously effective firepower over and over again.'" *Henry*, 688 F.3d at 640 (quoting William Rosenau, Book Note, *The Social History of the Machine Gun*, 90 Tech. Rev. 74 (Jan. 1987)). By 1934, when Congress passed the National Firearms Act, at least twenty-one states had adopted legislation generally prohibiting the private possession of machine guns.[3] Nine of those states enacted such laws against the backdrop of state constitutions that included Second Amendment analogues. *See* Eugene Volokh, *State Constitutional Rights to Keep and Bear Arms*, 11 Tex. Rev. L. & Pol. 191 (2006). States also have long restricted other weapons deemed dangerous and uncommon.[4] These "longstanding limitations are exceptions to the right to bear

---

[3] *See* 1931 Ark. Acts 705; 1927 Cal. Stat. 938; 37 Del. Laws 813 (1931); 1931 Ill. Laws 452; 1927 Ind. Acts 469; 1927 Iowa Acts 201; 1933 Kan. Sess. Laws 76; 1932 La. Acts 337; 1927 Mich. Pub. Acts 888; 1933 Minn. Laws 231; 1929 Mo. Laws 170; 1929 Neb. Laws 674; 1931 N.Y. Laws 2389; 1931 N.D. Laws 305-06; 1929 Pa. Laws 777; 1927 R.I. Acts & Resolves 256; 1934 S.C. Acts 1288-89; 1933 Tex. Gen. Laws 219; 1933 Wash. Sess. Laws 335; 1929 Wis. Sess. Laws 157; *see also* Doc. 10-7 (compiling relevant state statutes).

[4] *See, e.g.*, 1837 Ga. Laws 90 (prohibiting classes of knives, pistols, and other dangerous weapons); 1837-1838 Tenn. Pub. Acts 200, ch. 137 (banning sale of categories of knives); 1881 Ill. Laws 73 (barring possession or transfer of "any sling-shot or metallic knuckles or other deadly weapon of like character"); 1929 Mich. Pub. Acts 529 (making it "unlawful . . . to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading"); 1881 Ark. Acts 191 (banning sale or transfer of "any pistol of any kind whatever, except such pistols as are used in the army or navy"); 1879 Tenn. Pub. Acts 135 ("An Act to Prevent the Sale of Pistols"); 1889 N.Y. Laws 167 (prohibiting possession of "a slungshot, billy, sand-club or metal knuckles"); *see also* Doc. 10-8 (compiling relevant state statutes).

arms," and confirm that "restrictions on the possession of dangerous and unusual weapons are not constitutionally suspect because these weapons are outside the ambit of the" Second Amendment. *Marzzarella*, 614 F.3d at 91.

2. Plaintiff primarily argues that machine guns fall within the scope of the Second Amendment because they are "part of the ordinary military equipment," Pl. Br. 13, asserting that the Supreme Court's decision in *Miller* established "that the Second Amendment right extends to items that are part of the ordinary soldier's equipment." *Id.* at 44-46. On this reasoning, plaintiff contends that, while "shoulder-fired rockets, mortars, and heavy machineguns probably do not" fall within the Second Amendment, machine guns such as "M-16s fall within Second Amendment protection" because they are "within the scope of the military equipment issued to the average infantry soldier." *Id.* at 45. He notes that "[s]ince the Founding of Jamestown in 1607 the militia firearm has evolved from . . . [m]usket[s]" to machine guns utilizing "[d]rum-type magazine[s] holding up to 100 rounds," and "[b]elt-fed ammunition expending indefinite number of rounds." *Id.*

Plaintiff's argument is foreclosed by *Heller*. *See* 554 U.S. at 624-25. The Court acknowledged that, "[r]ead in isolation, *Miller*'s phrase 'part of ordinary military equipment' could mean that only those weapons useful in warfare are protected." *Id.* at 624. But the Court rejected that reading as "startling," because "it would mean that the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." *Id.*

17

Observing that, at the time of the founding, individuals reporting for militia service "were expected to appear bearing arms supplied by themselves and of the kind in common use at the time," *id.* (quoting *Miller*, 307 U.S. at 179), the Court "read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns," *id.* at 625.[5]

The Court in *Heller* also explained that plaintiff's proposed interpretation of the Second Amendment is not supported by the Amendment's prefatory clause: "A well regulated Militia, being necessary to the security of a free State. . . ." The Court noted that "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty." 554 U.S. at 627. Militia service therefore did not entail private possession of dangerous and unusual weapons designed solely for military use. In any event, the Court explained that "a prefatory clause does not limit or expand the scope of the operative clause." *Id.* at 578. And,

---

[5] Plaintiff notes that, in its discussion of *Miller*, the Supreme Court in *Heller* suggested that the National Firearms Act's regulation of machine guns is constitutional, but did not explicitly address the constitutionality of the Gun Control Act. *See* Pl. Br. 32-33. But the Gun Control Act had not yet been enacted at the time of *Miller* and therefore was not at issue in that case. The Court explained that an interpretation of the Second Amendment that might cast doubt on the constitutionality of the National Firearms Act would be "startling," because it understood machine guns not to be subject to Second Amendment protection. The same reasoning applies to the regulation of machine guns under the Gun Control Act.

while the prefatory clause suggests one purpose underlying the Second Amendment, it "does not suggest that preserving the militia was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting." *Id.* at 599. Thus, while the Court noted a possible objection "that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause," it concluded that "the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right." *Id.* at 627-28.

Plaintiff similarly misreads *Heller* when he argues that the exception from Second Amendment protection for dangerous and unusual weapons "does not pertain to the mere *possession* of a firearm (or other weapon), but only applies to the *manner* in which that right is exercised." Pl. Br. 18. The "important limitation on the right to keep and carry arms" identified in *Heller* does not pertain to conduct, but rather to "the sorts of weapons protected." 554 U.S. at 627; *see id.* at 622 (discussing its holding in *Miller* that "the *type of weapon at issue* was not eligible for Second Amendment protection"); *see also Marzzarella*, 614 F.3d at 91 (understanding *Heller* to hold that "dangerous and unusual weapons . . . are outside the ambit of the" Second Amendment).

Plaintiff likewise errs in reading *Heller* (Pl. Br. 24-25) to cast doubt on the constitutionality of a categorical prohibition on a type of weapon. In holding that "a

19

complete prohibition of [handguns] is invalid," the Court in *Heller* emphasized that "handguns are the most popular weapon chosen by Americans for self-defense in the home." 554 U.S. at 629; *see id.* (explaining that "[f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban"). In rejecting a categorical ban on one type of firearm, *Heller* was careful to make clear that other types of firearms did not enjoy similar protection. Plaintiff's reliance on this Court's decision in *Marzzarella* (Pl. Br. 25-26) is similarly unavailing. In that case, this Court rejected a claim that possession of an unmarked firearm at home was protected by the Second Amendment because it would have meant that "[p]ossession of machine guns or short-barreled shotguns . . . would . . . fall within the Second Amendment," and "the Supreme Court has made clear the Second Amendment does not protect those types of weapons." 614 F.3d at 94.

Plaintiff emphasizes *Heller's* discussion of sources discussing the common law crime of "affray," which he claims "always required that the arms be used or carried in such manner as to terrorize the population, rather than in the manner suitable for ordinary self-defense." *See* Pl. Br. 18-24; *see also, e.g.*, *State v. Langford*, 10 N.C. 381, 383-84 (1824) (observing that it "is said always to have been an offence at common law" "when a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people"). The Court did not thereby suggest that "dangerous and unusual weapons" are protected by the Second Amendment as long as they are not used to terrorize the population. Indeed,

20

weapons such as machine guns and grenades, although commonly employed by the military, may by their nature inspire terror in civilian life.

In any event, the historical basis for excluding weapons such as machine guns from the scope of the Second Amendment extends well beyond laws dealing with the crime of "affray," *see supra* nn.2, 3, and this Court relied on similar laws in upholding as presumptively lawful a state permitting requirement for the public carrying of handguns. *See Drake v.* Filko, 724 F.3d 426, 434 n.11 (2013) (concluding that "a firearms regulation may be 'longstanding' and 'presumptively lawful' even if it was only first enacted in the 20th century) (citing *NRA v. ATF,* 700 F.3d 185, 196-97, 202 (5th Cir. 2012) (upholding as constitutional the restriction on the purchase of firearms by minors, and observing that "[b]y 1923 . . . twenty-two States and the District of Columbia had made 21 the minimum age for the purchase or use of particular firearms)); *see also Heller v. District Of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) (noting that the Supreme Court "considered prohibitions on the possession of firearms by felons to be 'longstanding' although states did not start to enact them until the early 20th century" (internal quotation marks omitted).

### C. Federal Law Permissibly Regulates the Private Possession of Machine Guns.

Even assuming that the Second Amendment applied to the possession of a machine gun, the challenged restrictions would survive means-end scrutiny. Like other courts of appeals, this Court has applied intermediate scrutiny to laws that do

not burden "the core of the right conferred upon individuals by the Second

Amendment," which "is the right to possess usable handguns in the home for self-

defense." *Drake*, 724 F.3d at 436 (emphasis omitted). Federal regulation of machine

guns prohibits only dangerous weapons and leaves available other firearms, including

handguns, better suited for self-defense, and therefore does not implicate the "the

right of law-abiding citizens to possess non-dangerous weapons for self-defense in the

home." *Marzzarella*, 614 F.3d at 92; *see New York State Rifle and Pistol Ass'n*, 804 F.3d at

260 (applying intermediate scrutiny to assault weapon ban because "the prohibition of

semi-automatic rifles and large-capacity magazines does not effectively disarm

individuals or substantially affect their ability to defend themselves"). Plaintiff's

suggestion that the regulation of machine guns should be subject to strict scrutiny

(Pl. Br. 29-30) is directly at odds with *Heller,* which declared that longstanding

prohibitions of the sort at issue here are "presumptively lawful[.]" 554 U.S. at

627 n.26.; *see NRA*, 700 F.3d at 196 (observing that "longstanding measure[s] that

harmonize[] with the history and tradition of arms regulation in this country" do "not

threaten the core of the Second Amendment guarantee").[6]

---

[6] This Court and other courts of appeals have applied intermediate scrutiny to evaluate Second Amendment challenges. *See Marzzarella*, 614 F.3d at 97 (applying intermediate scrutiny to evaluate prohibition of movement of firearms with an obliterated or altered serial number); *Drake v. Filko*, 724 F.3d 426, 435-46 (3d Cir. 2013) (applying intermediate scrutiny to evaluate requirement that individuals obtain a permit to carry a handgun outside of home); *Kachalsky v. County of Westchester*, 701 F.3d 81, 93-97 (2d Cir. 2012) (same); *Woollard v. Gallagher*, 712 F.3d 865, 876-78 (4th Cir.

*Continued on next page.*

Under intermediate scrutiny, the regulation of machine guns must be upheld as constitutional if "the asserted governmental end [is] more than just legitimate" and is "either 'significant,' 'substantial,' or 'important,'" and "the fit between the challenged regulation and the asserted objective" is "reasonable, not perfect." *Marzzarella*, 614 F.3d at 98. Federal regulation of machine guns satisfies that standard because it serves Congress's important interest in addressing the "substantial risk that possession of this inherently dangerous weapon would produce violence or property damage." *United States v. Jennings*, 195 F.3d 795, 798-99 (5th Cir. 1999) (internal quotation marks omitted).[7]

Congress reasonably concluded that "machine guns . . . are primarily weapons of war and have no appropriate sporting use or use for personal protection." *Jennings*, 195 F.3d at 799 n.4 (quoting S. Rep. No. 90-1501, at 28 (1968)); *see United States v.*

---

2013) (same); *NRA*, 700 F.3d at 206 (observing that "to the extent that these laws resemble presumptively lawful regulatory measures, they must not trigger strict scrutiny"); *United States v. Mahin*, 668 F.3d 119, 123 (4th Cir. 2012) (collecting cases applying intermediate scrutiny to section 922(g) of the Gun Control Act); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (applying intermediate scrutiny to section 922(g)(1)); *Schrader v. Holder*, 704 F.3d 980, 989 (D.C. Cir. 2013) (same); *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (applying intermediate scrutiny to section 922(g)(9)). Plaintiff notes that a Sixth Circuit panel applied strict scrutiny in evaluating an as-applied challenge to 18 U.S.C. § 922(g)(4). *See* Pl. Br. 30. The Sixth Circuit granted the government's petition for rehearing en banc, and that opinion has been vacated. *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 775 F.3d 308, 322-29 (6th Cir. 2014), *pet. for reh'g en banc granted*, No. 13-1876 (Apr. 21, 2015).

[7] For the same reasons, federal regulation of machine guns would also satisfy strict scrutiny, were such scrutiny appropriate.

23

*Dunlap*, 209 F.3d 472, 478 n.12 (6th Cir. 2000) ("Congress required registration of these types of weapons because it believed that these weapons, by their very nature, were extremely dangerous and served virtually no purpose other than furtherance of illegal activity."). "[I]n response to gangster-style violence," Congress determined that "there is no reason why anyone except a law officer should have a machine gun or a sawed-off shotgun." *United States v. Serna*, 309 F.3d 859, 863 (5th Cir. 2002); *see* H.R. Rep. No. 83-1337, at 4542 (1954) (Congress enacted the National Firearms Act to target "lethal weapons . . . [that] could be used readily and efficiently by criminals or gangsters"); H.R. Rep. No. 99-495, at 7 (1986) (Congress added section 922(o) to the Gun Control Act due to recognition of "the need for more effective protection of law enforcement officers from the proliferation of machine guns"); *id.* at 4 (describing machine guns as "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime").

The Supreme Court has recognized "[t]he immense danger posed by machineguns," and "the moral depravity in choosing the weapon" for a crime. *United States v. O'Brien*, 560 U.S. 218, 230 (2010). Other courts have similarly described machine guns as "inherently dangerous," *United States v. Golding*, 332 F.3d 838, 840 (5th Cir. 2003), and "especially dangerous weapons," *RSM, Inc. v. Herbert*, 466 F.3d 316, 318 (4th Cir. 2006). Courts have therefore recognized that machine guns are "very different weapons from guns without the capability of automatic fire," *United States v. Kirk*, 105 F.3d 997, 1003 (5th Cir. 1997) (en banc) (Higginbotham, J., concurring); *see*

*also id.* at 1001-02 ("Machine guns possess a firepower that outstrips any other kind of gun."). "The destructive capacity of machine guns puts them in the same category as explosives, which the federal government has heavily regulated for over twenty-five years." *Id.* at 1001 (Higginbotham, J., concurring).

While handguns provide identifiable advantages for self-defense, *see Heller*, 554 U.S. at 710 (Stevens, J., dissenting), "[m]achine guns are no more useful for self-defense than are nonautomatic guns in all but a tiny fraction of civilian uses," Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense*, 56 UCLA L. Rev. 1443, 1487 (2009). And "[t]he firepower of a machine gun puts it in a quite different category from the handguns, shotguns, and rifles so popular with sportsmen." *Kirk*, 105 F.3d at 1002 (Higginbotham, J., concurring).

Although they are not well suited for any private lawful purpose, machine guns are "peculiarly adaptable to use by criminals in the pursuit of their criminal activities." *Rinzler v. Carson*, 262 So. 2d 661, 666 (Fla. 1972). Indeed, "a machine gun's destructive capacity makes it highly useful for protecting commerce in contraband such as narcotics." *Kirk*, 105 F.3d at 1004 (Higginbotham, J., concurring). And a machine gun undoubtedly would have devastating effect if used in a mass shooting. *Cf. Friedman*, 784 F.3d at 411 (observing that "[a] ban on assault weapons and large-capacity magazines . . . may reduce the carnage if a mass shooting occurs").

That "the majority of homicide and firearms crime" is "committed with handguns," Pl. Br.. 41, is hardly surprising, given the strict regulation of machine gun

possession. Plaintiff does not dispute that a machine gun would be significantly more dangerous than a handgun if used in a crime, or that more criminals would choose to use machine guns were they readily available. That the longstanding regulation of machine guns has succeeded in limiting their use for criminal purposes does not cast doubt on the utility of those laws. Congress need not allow greater access to machine guns in order to further establish that they are dangerous. *See Drake*, 724 F.3d at 436 ("When reviewing the constitutionality of statutes, courts 'accord substantial deference to the [legislature's] predictive judgments.'" (quoting *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 195 (1997)).

## II. The District Court Correctly Held that the Gun Control Act Applies to Plaintiff's Possession of a Machine Gun.

The district court correctly rejected plaintiff's implausible interpretation of the Gun Control Act not to apply to weapons held in trust. 1 App. 42-43. As ATF explained, "[t]he fact that an unincorporated trust is not included in the definition of 'person' under the [Gun Control Act] does not mean that an individual may avoid liability under section 922(o) by placing a machinegun 'in trust.'" 2 App. 98. Rather, because "a trust is not an entity recognized as a 'person' under the applicable law, it cannot make or hold property and is disregarded." *Id.* Instead, ATF properly "consider[s] the individual acting on behalf of the trust to be the proposed maker/possessor of the machinegun." *Id.* The district court further explained that ATF's approach accords with the law of trusts, because a "[t]rust is not an entity

distinct from its trustees and capable of legal action on its own behalf," and therefore "cannot contract or own property." 1 App. 42 (internal quotation marks omitted).

Plaintiff's contrary interpretation of the Gun Control Act would render the Act meaningless by allowing anyone to avoid its prohibitions by establishing an unincorporated trust. Under his interpretation, even a convicted felon could possess a firearm through an unincorporated trust, despite the prohibition in 18 U.S.C. § 922(g)(1). That interpretation is contrary to logic and the plain meaning of the statute.

Plaintiff observes (Br. 50-51) that ATF issued a notice of proposed rulemaking to amend its regulations to ensure that individuals who seek to possess firearms through trusts, corporations, or other legal entities are subject to appropriate background checks under the National Firearms Act. *See* 78 Fed. Reg. 55014, 55016-18 (Sept. 9, 2013). That proposed rule has since become final. *See* 81 Fed. Reg. 2658 (Jan. 15, 2016). ATF's final rule implements the National Firearms Act and not the Gun Control Act, and it in no way supports plaintiff's interpretation of the Gun Control Act not to apply to individuals acting through trusts. To the contrary, it demonstrates ATF's concern "that such persons should not be excluded from background checks and other requirements of the regulations that seek to ensure that prohibited persons do not gain access to [National Firearms Act] firearms." 78 Fed. Reg. at 55016; *see* 81 Fed. Reg. at 2666-67 (explaining that the rule "was designed to

27

prevent persons who are prohibited from receiving or possessing firearms from

obtaining them through the use of trusts").

## III.  Plaintiff's Remaining Claims Are Waived and, in Any Event, Lack Merit.

1.  Plaintiff's brief on appeal addresses only his Second Amendment claim and

his erroneous interpretation of the Gun Control Act, and he has therefore waived any

challenge to the district court's disposition of his other causes of action.  Plaintiff

mentions his equal protection and due process claims in his statement of issues and

summary of argument (Pl. Br. 1-2, 11), but ignores those claims entirely in the body of

his brief.  Plaintiff does not address his Commerce Clause claim in either his

statement of issues or his summary of argument, and his discussion of the National

Firearms Act legislative history (Pl. Br. 29) does not constitute a substantive

argument.  And plaintiff nowhere renews his detrimental reliance claim.

In similar circumstances, this Court has deemed such claims waived because

they "w[ere] not substantively argued."  *Mitchell v. Cellone*, 389 F.3d 86, 92 (3d Cir.

2004) ("Where an appellant presents an issue in his statement of issues raised on

appeal, but not in the argument section of his brief, he has 'abandoned and waived

that issue on appeal.'" (quoting *Travitz v. Northeast Dep't ILGWU Health & Welfare

Fund*, 13 F.3d 704, 711 (3d Cir. 1994)); *Kirschbaum v. WRGSB Ass'ns*, 243 F.3d 145, 151

n.1 (3d Cir. 2001) (deeming claim waived where the appellant did not "include the

issue in its statement of issues for review and fully develop an argument in the

argument portion of its brief").  The same reasoning applies here, and plaintiff cannot

save these claims by raising them for the first time in his reply brief. *See, e.*g., *FDIC v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000) (issues not raised in opening brief on appeal are waived).

2. Even if they were properly before the Court, plaintiffs remaining causes of action would fail on their merits.

Plaintiff lacks standing to assert his Commerce Clause claim for the same reasons that he lacks standing to assert his Second Amendment claim—Pennsylvania law independently bars his possession of a machine gun. *See supra* Part I.A. And, in any event, the district court correctly concluded that plaintiff failed to state a claim that federal regulation of machine guns exceeds Congress's Commerce Clause authority. This Court has already upheld Congress's authority to regulate machine guns through the National Firearms Act and section 922(o) of the Gun Control Act, *United States v. Rybar*, 103 F.3d 273 (3d Cir. 1996), and "[e]very other circuit that has reached the issue has [likewise] held that § 922(o) is constitutional under the Commerce Clause," *see Henry*, 688 F.3d at 641 & n.4 (collecting cases). The Supreme Court's most recent decisions only further confirm that Congress's Commerce Clause extends to the sort of regulation at issue here. S*ee Henry*, 688 F.3d at 641 n.5 (explaining that *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012) is inapposite because it "involved a requirement that individuals take action," whereas "Section 922(o) involves a *prohibition* of conduct").

Plaintiff's equal protection claim fails for substantially the same reasons as his Second Amendment claim. Plaintiff does not fall within a suspect class, and he has not identified any fundamental right to possess a machine gun. *See supra* Part I.B. Moreover, Congress's regulation of machine guns satisfies any applicable level of means-end scrutiny. *See supra* Part I.C. Congress had a rational basis for differentiating between machine gun possession by law enforcement and possession by private civilians. And Congress permissibly included a grandfathering provision in section 922(o), because "Congress may work incrementally in protecting public safety." *Olympic Arms v. Buckles*, 301 F.3d 384, 390 (6th Cir. 2002) (rejecting argument that import ban of semi-automatic weapons was unreasonable because it did not reach all similar weapons).

Plaintiff's due process claim fails because he cannot demonstrate "that there has been a . . . deprivation of a legally protected . . . property interest." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). Plaintiff has no property interest in unlawfully manufacturing or possessing a machine gun in violation of section 922(o) of the Gun Control Act. *See Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (in order to have a property interest, an individual "must . . . have a legitimate claim of entitlement"). Likewise, plaintiff did not have a property interest in ATF's erroneous approval of his application to manufacture a machine gun, when the National Firearms Act expressly directs that "[a]pplications shall be denied if the making or possession of the firearm would place the person making the firearm in

30

violation of law." 26 U.S.C. § 5822. In any event, ATF was well within its authority in revoking plaintiff's application, and "it is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions." *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002); *see also United Gas Improvement Co. v. Callery Props., Inc.*, 382 U.S. 223, 229 (1965) (noting that an "agency, like a court, can undo what is wrongfully done by virtue of its order").

For the same reasons, plaintiff's detrimental reliance claim fails because "he cannot show that his reliance on the approval of his Form 1 was to his detriment." 1 App. 48. In any event, at a minimum, any claim for equitable estoppel would require a showing of "affirmative misconduct" on the part of the government, *Mudric v. Attorney General of the United States*, 469 F.3d 94, 99 (3d Cir. 2006), and plaintiff cannot show that ATF's erroneous approval rose "to the level of affirmative misconduct," which "requires something far more than mere negligence," 1 App. 49 (citing *Mudric*, 469 F.3d at 99; *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981)).

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BENJAMIN C. MIZER
 *Principal Deputy Assistant Attorney*
 *General*

ZANE DAVID MEMEGER
 *United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
PATRICK G. NEMEROFF
 *(202) 305-8727*
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7217*
 *U.S. Department of Justice*
 *950 Pennsylvania Ave., N.W.*
 *Washington, D.C.  20530*

JANUARY 2016

## REQUIRED CERTIFICATIONS

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.  I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,262 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

I further certify to the following:

As counsel for the federal government, I am not required to be a member of the bar of this Court.

The text of the electronic brief is identical to the text in the paper copies.

The electronic brief has been scanned for viruses and found to be virus free.

*/s/ Patrick G. Nemeroff*
Patrick G. Nemeroff

# CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2016, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Patrick G. Nemeroff*
Patrick G. Nemeroff